```
          UNITED STATES DISTRICT COURT
             DISTRICT OF MINNESOTA
           Civil No. 09-1658(DSD/FLN)
```

Laurie Dahl,

       Plaintiff,

v.                                                           **ORDER**

High-Tech Institute, Inc.,

       Defendant.

    Stephen M. Thompson, Esq., Tammy P. Friederichs, Esq. and Friederichs & Thompson, P.A., 1120 East 80th Street, Bloomington, MN 55420, counsel for plaintiff.

    Andrew J. Voss, Esq., Jodie F. Weinstein, Esq. and Littler Mendelson, P.C., 80 South Eighth Street, Suite 1300, Minneapolis, MN 55402, counsel for defendant.

    This matter is before the court upon a motion for summary judgment by defendant High-Tech Institute, Inc. (High-Tech). Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants the motion.

**BACKGROUND**

    This employment dispute arises out of the termination of plaintiff Laurie Dahl (Dahl) by High-Tech. Dahl began work as an admissions representative at High-Tech, a post-secondary educational institution, on May 28, 2008. On August 15 and October 2, 2008, Dahl received warning letters outlining employment performance problems. See Dahl Dep. 114-17, 132-33, Mar. 17, 2010.

On October 7, 2008, the Director of Admissions, Torrence Harriel (Harriel), drafted a "Recommendation for Termination" for Dahl. See Harriel Dep. 73-74, Apr. 20, 2010. Harriel did not submit the recommendation because he decided to work with Dahl to improve her performance. Id.

On October 9, 2008, Dahl and a co-worker, Holly Jacobson (Jacobson), engaged in a heated argument in front of potential students. See Dahl Dep. 150-57. Dahl contends that Jacobson threatened her with violence, swore at her, yelled at her, grabbed her by the neck and pushed her. Id. Dahl claims that Jacobson harassed her on several occasions before the October 9 incident. Specifically, Dahl alleges that Jacobson touched her back and shoulders, brushed against her, poked her chest, pinched her, pushed her, offered to "take [another employee] out" for her, and made sexual comments. Dahl Dep. 55-56, 76, 83, 93, 94, 99, 156. Dahl claims that she repeatedly complained to several management-level officials at High-Tech about the alleged harassment between July and October 2008. See id. at 39, 57-62, 69-76, 93-95, 105-109, 134-36, 196-97.

High-Tech contends that Dahl first reported harassment in an email message to Harriel, sent the evening of the October 9, 2008, incident. In the email, Dahl described a previous incident in which Jacobson told her, "'you are hot, you turn me on' and made sexual gestures." Vue Aff. Ex. 1. In a second email to Harriel on

October 12, 2008, Dahl stated that Jacobson made sexual comments and advances toward her "on three separate occasions." Vue Aff. Ex. 6. Dahl wrote that she had "not reported any of this until recently" because she believed her supervisors disliked her and were biased towards Jacobson. Id.

High-Tech interviewed Dahl, Jacobson and other witnesses of the October 9 altercation. Following the investigation, High-Tech terminated both Dahl and Jacobson. See Beseke Dep. 55-60, Apr. 20, 2010. On January 6, 2009, Dahl filed a charge of discrimination with the Minnesota Department of Human Rights (MDHR). Dahl Dep. Ex. 8, ECF No. 14-3. The MDHR issued a finding of no probable cause on April 24, 2009. Dahl filed this action in Minnesota state court on June 10, 2009, alleging sexual harassment and reprisal discrimination in violation of the Minnesota Human Rights Act (MHRA) and assault and battery under the doctrine of respondeat superior. High-Tech timely removed.[1] The court now considers the motion for summary judgment.

**DISCUSSION**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

---

[1] The court has jurisdiction under 28 U.S.C. § 1332. High-Tech is an Arizona corporation, with its principal place of business in Phoenix, Arizona. Dahl is a citizen of Minnesota. The amount in controversy exceeds $75,000, exclusive of interests and costs.

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**I. MHRA Claims**

   **A. Sexual Harassment**

Same-sex sexual harassment is actionable under the MHRA. See Beach v. Yellow Freight Sys., 312 F.3d 391 (8th Cir. 2002). To succeed on a hostile work environment claim based on sexual harassment, Dahl must show that (1) she belongs to a protected

4

group, (2) she was subject to unwelcome harassment, (3) the harassment was based on her sex, (4) the harassment affected a term, condition, or privilege of employment and (5) High-Tech knew or should have known of the harassment and failed to take proper action.[2] See Erenberg v. Methodist Hosp., 357 F.3d 787, 792 (8th Cir. 2004).

To decide whether a plaintiff has demonstrated that the harassment affected a term, condition or privilege of employment, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 843 (8th Cir. 2002) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23 (1993)). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to ... create an abusive working environment." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986) (citation omitted). Isolated incidents, unless very severe, do not constitute sexual harassment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). To avoid imposing "a code of workplace civility," the threshold for

---

[2] The court analyzes Title VII and MHRA discrimination and retaliation claims under the same framework. See Riser v. Target Corp., 458 F.3d 817, 820 & n.2 (8th Cir. 2006); Thorn v. Amalgamated Transit Union, 305 F.3d 826, 830 (8th Cir. 2002).

5

actionable harm is high.  Id.  The harassment must be so intimidating, offensive, or hostile that it "poisoned the work environment."  Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999) (citation omitted).

High-Tech argues that Dahl failed to show that the harassment was sufficiently severe and pervasive to affect a term or condition of her employment.  The court agrees.

Construing the disputed facts in Dahl's favor, Jacobson's alleged conduct of rubbing Dahl's shoulders, brushing against her, pinching her, and making comments such as "you're hot" and "I'd do you," does not rise to the level of severe and pervasive harassment required under the MHRA.  See, e.g., Anderson v. Family Dollar Stores of Ark., Inc., 579 F.3d 858, 862 (8th Cir. 2009) (holding that supervisor rubbing plaintiff's shoulders or back, calling her "baby doll", accusing her of not wanting to be "one of [his] girls", suggesting that she should be in bed with him having a Mai Tai in Florida and insinuating that she could go farther in the company if she got along with him, were not severe or pervasive enough to alter term or condition of employment).  Construing the disputed facts in the light most favorable to Dahl, the alleged conduct fails to meet the threshold for actionable conduct under

the MHRA. Therefore, summary judgment is warranted on Dahl's sexual harassment claim.[3]

**B. Retaliation**

Dahl next argues that High-Tech unlawfully terminated her in retaliation for complaining about Jacobson. A prima facie case of retaliation requires a showing that (1) Dahl engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) there is a causal connection between the protected activity and the adverse employment action. See Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 693 (8th Cir. 2001). A plaintiff can show a causal connection between protected activity and an adverse action when the two events occur in close proximity. See Jackson v. Flint Ink N. Am. Corp., 370 F.3d 791, 798 (8th Cir. 2004). However, "more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999); see also Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 570 (8th Cir. 2000) (general allegations and opinion testimony do not suffice to establish a causal connection).

---

[3] As a result, the court need not address High-Tech's argument that Dahl failed to show that High-Tech knew, or should have known, of the inappropriate conduct but failed to take remedial action.

High-Tech argues that Dahl failed to show a causal connection between a protected activity and an adverse employment action. Dahl argues that a temporal connection between her complaints and termination shows causation. Dahl's version of the facts, however, undermines a finding of temporal proximity. Over three months passed between July 2008, when Dahl claims she first complained of the harassment, and her termination on October 17, 2008. See Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) (interval of two months between complaint and termination dilutes any inference of causation). Moreover, the October 9, 2010, altercation constitutes an "intervening unprotected" event that "erode[s] any causal connection" that could have existed from Dahl's earlier reports. Tenkku v. Normandy Bank, 348 F.3d 737, 742 (8th Cir. 2003) (citation omitted). As to complaints made after the October 9 altercation, Dahl's "post-hoc complaints" do not bar her termination because "the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." Griffith v. City of Des Moines, 387 F.3d 733, 738 (8th Cir. 2004) (internal quotation marks and citation omitted). As a result, Dahl has not made a prima facie showing of retaliation.

Moreover, even if Dahl could establish a prima facie case, her claim fails at the pretext stage. If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate

a legitimate, nondiscriminatory reason for the termination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). High-Tech articulated Dahl's poor job performance and the October 9 altercation as legitimate, nondiscriminatory reasons for the termination. See id. The burden then returns to the plaintiff to prove that the articulated, legitimate reason is pretext for unlawful retaliation. See id. Dahl offers no evidence to show that High-Tech's proffered reasons were pretextual. Therefore, summary judgment is warranted on Dahl's retaliation claim.

## II. Tort Claims

Dahl also asserts common law intentional tort claims of assault and battery against High-Tech. High-Tech argues that Dahl's common law claims are preempted by the Workers' Compensation Act (WCA) and that, in any case, the alleged intentional torts were not committed within the scope of employment. The court agrees.[4]

The WCA is the exclusive remedy for an employee who suffers a job-related "personal injury." Minn. Stat. § 176.031. The assault exception to the WCA excludes any injury caused by a fellow employee intended "to injure the employee because of personal reasons." Minn. Stat. § 176.011, subdiv. 16. To fall within this exception, the assault must arise from personal circumstances entirely unrelated to the victim's employment. See McGowan v. Our

---

[4] As a result, the court need not address High-Tech's MHRA preemption argument.

9

Savior's Lutheran Church, 527 N.W.2d 830, 834 (Minn. 1995) (rape of homeless shelter employee by shelter client in workplace during work hours not exempt from WCA). Dahl alleges that she was assaulted because of Jacobson's "personal feelings" toward her. See Pl.'s Mem. Opp'n 35. Dahl presents no evidence of a personal relationship outside the workplace, however, and the alleged assault occurred in the workplace during work hours. As a result, Dahl's tort claims are preempted by the WCA. See McGowan, 527 N.W.2d at 834.

Even if the WCA did not preempt Dahl's tort claims, Dahl's argument that High-Tech is vicariously liable for Jacobson's tortious conduct fails. Under Minnesota law, an employer is liable for an employee's intentional torts only when the acts were within the scope of employment. See Marston v. Minneapolis Clinic of Psychiatry & Neurology, Ltd., 329 N.W.2d 306, 311 (Minn. 1982). Acts fall within the scope of employment when they were foreseeable, were related to and connected with duties of employee and were committed within work-related limits of time and place.[5] See id.; Lange v. Nat'l Biscuit Co., 211 N.W.2d 783, 784 (Minn. 1973). Dahl argues that High-Tech's company policy against sexual harassment is evidence that the intentional torts were sufficiently foreseeable to fall within the scope of employment. The Minnesota

---

[5] Because the tests are different, an act may be related to employment for WCA purposes but fall outside the scope of employment under the respondeat superior analysis.

Supreme Court has rejected this argument. See Frieler v. Carlson Mktg. Grp., Inc., 751 N.W.2d 558, 585 (Minn. 2008) ("The fact that an employer proactively adopts such a [anti-harassment] policy is insufficient, in and of itself, to create a genuine issue of material fact regarding whether the sexual harassment committed by an employee was foreseeable."). As a result, Dahl fails to demonstrate that the alleged intentional torts were foreseeable and thus within the scope of employment. Therefore, High-Tech is not vicariously liable for Jacobson's alleged tortious conduct, and summary judgment is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that High-Tech's motion for summary judgment [Doc. No. 11] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 15, 2010

s/David S. Doty  
David S. Doty, Judge  
United States District Court